UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
STEPHEN MITCHELL,                              :

                                               :

                Plaintiff,

                                               :        OPINION AND ORDER
        -v.-

                                               :        01 Civ. 2760 (JGK) (GWG)

HARVEY FISHBEIN, et al.,

                                               :

                Defendants.                    :
-------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Currently before the Court are the following motions: (1) defendants' motion for an order

allowing in camera submissions of affidavits or interrogatories from certain non-parties (Docket

#133); (2) plaintiff's related motion to depose those non-parties or in the alternative to preclude

the use of their testimony (Docket #160); (3) plaintiff's motion to preclude the testimony of

Gerald Lebovits and the introduction of certain documents prepared by him (Docket #157); and

(4) defendants' motion seeking various forms of relief relating to Mitchell's witnesses (Docket

#132).[1]

---

[1] The Court had previously issued orders directing the parties to identify the motions they
wished to pursue.  See Order, dated June 15, 2007 (Docket #164); Order, dated June 22, 2007
(Docket #162); Order, dated July 17, 2007 (Docket #177).  The Orders informed the parties that
any "failure to include a pending motion on this list (or to provide the list altogether) will result
in the motion being denied or being deemed abandoned."  See, e.g., Order, dated July 17, 2007
(Docket #177), at 1.  In response, the defendants' listing referred to the two motions they had
filed.  See Letter from Monica Connell, dated July 23, 2007 (Docket #180); Letter from Monica
Connell, dated July 24, 2007 (Docket #181).

        Mitchell's response indicated that he was withdrawing his (apparently undocketed) third
motion to amend the complaint.  See Letter from Stephen T. Mitchell to the Court, dated July 25,
2007 (Docket #182), at 2.  His response contains two listings: one apparently relating to the
(continued...)

We discuss each of the pending motions below.

I.  The Two Motions Regarding "Confidential Evaluators"

There are two motions relating to "confidential evaluators": (1) a motion from defendants to permit the submission of ex parte affidavits or interrogatory responses from these evaluators [2] and (2) a related motion from plaintiff seeking to preclude any testimony from them.[3]

A.  Relevant Facts

Mitchell is an attorney who served on the Assigned Counsel Panel, commonly referred to as the "18-B Panel," for the Supreme Court, New York County.  At some point prior to October 1997, he applied for recertification to the Panel and for membership on the Homicide Panel.  In March or April 1998, Mitchell was denied recertification.  Mitchell alleges in the instant action

_____

[1](...continued)
preservation of evidence (Docket #157) and a second relating to depositions of evaluators (Docket #60).  Inexplicably, the first listing also includes references to Dockets ##156 and 159, both filed on June 18, 2007, which sought relief based on defendants' alleged failure to provide plaintiff with copies of his deposition transcript and interrogatory answers.  the listing does not identify by date or docket number the defendants' opposition to these latter motions (or make reference to the lack thereof).  Given that the first listing relates only to one motion, the Court assumes Mitchell intended it to relate to the motion regarding the preservation of evidence (Docket #157).  Thus, Dockets ##156 and 159 are deemed abandoned.

[2] See Notice of Motion, dated May 1, 2007 (Docket #133); Affirmation of Constantine Speres, dated May 1, 2007 (Docket #133); Memorandum of Law in Support of State Defendants' Motion for An Order Pursuant to Fed. R. Civ. P. 26, dated May 1, 2007 (Docket #134); Memorandum in Opposition to Motion to Deny Plaintiff the Deposition of the Confidential Evaluators, dated May 7, 2007 (Docket #149); Reply Memorandum of Law in Further Support of State Defendants' Motion for an Order Pursuant to Fed. R. Civ. P. 26, dated May 8, 2007 (Docket #145); Affirmation of Constantine Speres, dated May 8, 2007 (Docket #143).

[3] See Notice of Motion, dated May 27, 2007 (Docket #160); Affirmation and Memorandum of Law in Support of the Deposition of the Confidential Witnesses, dated May 27, 2007 (attached to Notice of Motion); State Defendants' Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Fed. R. Civ. P. 30, dated June 29, 2007 (Docket #168); Affirmation of Constantine A. Speres, dated June 29, 2007 (Docket #169).

2

that this decision was made on the basis of race and retaliation.  See Second Amended

Complaint, filed Dec. 4, 2002 (Docket #55).[4]

      Decisions whether to recertify an attorney to the 18-B Panel for the Appellate Division,

First Department, were made by its "Central Screening Committee."  The task of reviewing

Mitchell's application for recertification fell to Judge Gerald Lebovits.  As part of this review,

Judge Lebovits contacted attorneys and judges regarding Mitchell's conduct as an attorney.

Judge Lebovits summarized his findings in two letters dated January 24 and January 26, 1998,

which were addressed to a subcommittee that had been formed to review Mitchell's application.

See Docket #133, Exs. A & B.  These letters contain, inter alia, a recounting of the comments of

various individuals (including judges and attorneys) who spoke to Judge Lebovits about

Mitchell.  The parties have referred to these individuals as "evaluators" or "confidential

evaluators."

      During discovery, the parties disputed whether Mitchell was entitled to have access to the

identities of these evaluators.  In March 2005, this Court issued a decision permitting the

defendants to redact the names of the evaluators from their disclosures to Mitchell.  See Mitchell

v. Fishbein, 227 F.R.D. 239 (S.D.N.Y. 2005), aff'd, 2005 WL 1572158 (S.D.N.Y. July 1, 2005).

Further, because it was unclear at that time "whether the information being provided . . .

contain[ed] clues that would allow [Mitchell] to deduce" the identities of the evaluators, the

Court directed that "Mitchell may not contact any evaluator whom he is able to identify from any

---

[4] There is apparently a dispute between the parties as to whether the Second Amended Complaint also makes allegations reflecting a due process claim and as to whether, if such a claim is stated, the claim was abandoned.  It is not necessary to reach this question, however, to decide the instant motions.

of the documents disclosed to him with respect to any aspect of this litigation unless he obtains leave of Court following written application made on notice to the defendants."  227 F.R.D. at 255.

    B.  Discussion

    Each party has made a motion pertaining to these evaluators.  Defendants' motion consists of the request that they be permitted to submit in camera sworn statements from these individuals to the Court.  Mitchell's motion seeks to allow Mitchell to depose these individuals or in the alternative to preclude their testimony entirely.

    The defendants' motion apparently was prompted by a conversation between defendants' counsel and Mitchell in which Mitchell indicated that he was not prepared to forgo any argument that Judge Lebovits had inaccurately recounted the comments of the confidential evaluators.  See Docket #134 at 6.   Indeed, plaintiff's opposition papers make clear that he intends to argue, for example, that "[t]here are factual inaccuracies and exaggerations in the Mr. Lebovits['s] notes that suggest to me that what he reported is not true."  See Docket #149 at 9.  For purposes of this motion, the Court assumes arguendo that any such claim by Mitchell would be relevant to this case.

    Had their been no protective order issued with respect to the evaluators, plaintiff's contention regarding Judge Lebovits's accuracy could have been addressed through plaintiff's offering of the testimony of the evaluators themselves.  The defendants, however, successfully obtained an order shielding their identities (that is, the March 2005 decision) and thus plaintiff cannot obtain their testimony to test whether Judge Lebovits accurately relayed their comments.

The March 2005 decision also effectively restrains defendants from offering the evaluators' testimony to rebut any claim that Judge Lebovits reported their comments inaccurately.

Apparently concerned about this possibility, the defendants have asked the Court to conduct an ex parte review of sworn statements from the evaluators "attesting to the comments attributed to them by" Judge Lebovits in his January letters.  See Docket #134 at 2.  The defendants do not say directly, however, what is the purpose of having the Court undertake this task.  They state only that the Court's review would "adequately address the issue of the accuracy of Judge Lebovits's letters, resolving this issue, while being mindful of the important policy concerns of confidentiality at issue."  See Docket #134 at 7.

The defendants' request is denied.  To the extent that their motion is simply to "allow[] State defendants to submit for in camera review" the evaluators' statements (which is all their notice of motion, Docket #133, says), the mere submission of these materials serves no purpose and thus will be denied for this reason alone.

It seems, however, that defendants contemplate additional action by the Court following submission of the materials, which the Court will now address.  Because the defendants expect that the Court's review of these statements will "resolv[e]" the issue of the accuracy of Judge Lebovits's letters, the Court can only assume that the defendants contemplate that, were the ex parte review to occur, (1) the Court would determine whether each evaluator's recollections match the report made by Judge Lebovits; and (2) if there is a match, the Court would preclude plaintiff from contending at trial that Judge Lebovits inaccurately recounted that particular evaluator's statement.

If this is what the defendants mean to request, this request too is denied. Assuming, arguendo, that the evaluators' statements match the reports of Judge Lebovits, the defendants provide no legal authority by which the Court could use statements – which are not subject to cross-examination, are submitted ex parte, and are obviously inadmissible at trial – to preclude plaintiff from making arguments to a jury regarding Judge Lebovits's reporting of the evaluators' statements. Nor is the Court aware of any such authority. The only cases cited by defendants to support their request, see Docket #134 at 8, are irrelevant. In In re Grand Jury Subpoena, 72 F.3d 271, 276-77 (2d Cir. 1995), it was held that a judge could rely on an ex parte Government submission in adjudicating a contempt proceeding arising from a witness's failure to testify before a grand jury. Stoddard v. United States, 710 F.2d 21 (2d Cir. 1983), also involved the submission of evidence for purposes of an adjudication by a judge – specifically, a determination of whether the subject of a wiretap would be allowed access to records relating to the wiretap. See 18 U.S.C. § 2518(8)(d). In determining that the materials should not be disclosed because of the potential that it might interfere with an ongoing homicide investigation, Stoddard held that it was permissible for a judge to review an ex parte submission from the Government. Stoddard, 710 F.2d at 23-24.

The procedure apparently contemplated by defendants bears no relationship to what was approved in either of these cases. First, the ex parte materials in these cases were not used by a judge to make factual determinations as to what evidence or arguments could be presented to a jury. Second, there were significant governmental interests at stake in both cases that could be adequately resolved only through the ex parte submissions. Here, by contrast, the only reason given by the defendants for their proposed procedure is to vindicate their "strong interest in

protecting the identities of the confidential evaluators." <u>See</u> Docket #134 at 8.  It is not

necessary, however, to engage in defendants' proposed procedure to vindicate that interest.  If

plaintiff attempts at trial to challenge Judge Lebovits's recollections as inaccurate, that challenge

in of itself will not disclose the identities of the confidential evaluators.  The defendants' interest

in protecting the identities of the evaluators was accommodated by acceding to their request that

plaintiff not be permitted to learn their identities.  Having obtained this ruling, and having thus

cut off an avenue of inquiry by plaintiff, defendants should not be heard to complain that it may

disadvantage them in their defense of a civil suit.  <u>See</u> Docket #149 at 12 (plaintiff notes that

"[t]he defendants should bear the brunt of their decision to deny plaintiff access to these

witnesses in a deposition").  Put another way, the defendants' interest in precluding arguments in

this civil suit regarding the accuracy of Judge Lebovits's recollection is insufficient to justify the

procedure they contemplate.

Mitchell's cross-motion seeking to depose the evaluators appears to be contingent on the

defendants' being granted the relief they seek.  <u>See</u> Docket #160 at 2 ("plaintiff should be

allowed to depose the so-called confidential evaluators . . . if the defendants are allowed by the

district court to make use of their testimony at trial"); <u>accord</u> <u>id.</u> at 9.  Accordingly, the cross-

motion is denied as moot.[5]

_____

        [5] To the extent Mitchell's papers could be construed as seeking to depose the evaluators
independent of the ruling on the defendants' motion, any such request would be governed by the
March 2005 decision. That decision recognized the potential significance of the evaluators'
evidence.  However, having balanced the benefit of plaintiff's obtaining that evidence against the
harm that would result in disclosure, it concluded that the evaluators' identities need not be
disclosed.  <u>Mitchell</u>, 227 F.R.D. at 255.  Mitchell has not made any additional showing sufficient
to overcome the privilege.  <u>See also</u> <u>Mitchell</u>, 2005 WL 1572158, at *2 ("[T]he plaintiff has
made only a speculative showing that the Committee misrepresented the comments it received.
                                                                      (continued...)

II.  Motion to Preclude Testimony of Judge Lebovits

       Plaintiff has made a motion that seeks to preclude the testimony of Judge Lebovits and the introduction of documents authored by him.[6]  The motion is based on the contention that Judge Lebovits did not preserve handwritten notes he made during a discussion he and Mitchell had in October 1997 that related to Mitchell's application for recertification.  Mitchell asserts that Judge Lebovits "was aware of the prospect of future litigation that could be initiated by plaintiff."  See Docket #157 at 6.  He asserts that Judge Lebovits "knowingly or negligently failed to maintain the notes."  See id. at 7.  The only admissible evidence in the record with respect to these notes, however, comes from Judge Lebovits.  He does not dispute that he took notes during his October 1997 meeting with Mitchell.  Judge Lebovits testified at his deposition that during this meeting, Mitchell stated to Judge Lebovits that if the Committee rejected him, he would sue.  See Docket #171, Ex. D at 27.  Judge Lebovits testified that despite this statement, he did not actually believe "in a million years" that Mitchell would sue.  Id. at 29.  He also testified that there were no "significant" differences between his notes and his January letters and

---

      [5](...continued)
The plaintiff is not precluded from attempting to make this showing at a future point in the litigation.  However, at this point, there is no showing of the importance of this information that outweighs the showing of real costs to the disclosure supported by credible affidavits.").  Accordingly, to the extent the cross-motion seeks leave to depose the evaluators independent of the Court's ruling on the defendants' motion, it would have to be denied.

      [6] See Notice of Motion, filed May 27, 2007 (Docket #157); Combined Affirmation and Memorandum of Law, dated May 27, 2007 (attached to Notice of Motion); Memorandum of Law in Opposition to Plaintiff's Motion to Preclude the Testimony of Defendant Gerald Lebovits, dated June 29, 2007 (Docket #170); Declaration of Monica A. Connell in Opposition to Plaintiff's Motion to Preclude the Testimony of Gerald Lebovits, dated June 29, 2007 (Docket #171); Reply to Defendants' Opposition For Rule 37 Sanctions for Spoliation, dated July 6, 2007 (Docket #174).

that the notes "would be the same thing that's in my letter." Id. at 40, 58.  He stated that

"[e]verything of relevance that I was told, I included into my letters." Id. at 33.  Judge Lebovits

did not destroy the notes but they cannot now be found.  Id. at 34-35.

"Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  A party seeking an

adverse inference instruction based on the destruction of evidence must establish

> (1) that the party having control over the evidence had an obligation to preserve it
> at the time it was destroyed; (2) that the records were destroyed "with a culpable
> state of mind"; and (3) that the destroyed evidence was "relevant" to the party's
> claim or defense such that a reasonable trier of fact could find that it would
> support that claim or defense.

Residential Funding Corp. v. Degeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citing

Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107-12 (2d Cir. 2001)).[7]  The party

seeking the sanction bears the burden of establishing these elements.  See, e.g., Smith v. City of

New York, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005). .

Mitchell's motion on this point fails for at least two reasons.  With respect to the first

element, the obligation to preserve evidence arises only when "the party has notice that the

evidence is relevant to litigation or when a party should have known that the evidence may be

relevant to future litigation." Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir.), cert.

denied, 534 U.S. 891 (2001) (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.

1998)).  Here, Mitchell has not shown that Judge Lebovits should have assumed that the notes of

---

[7]  While Mitchell seeks the sanction of preclusion of evidence, the same test logically
should apply to such a request as well.

his conversation with Mitchell needed to be preserved when it was Judge Lebovits's intention to produce a report based on those notes, Mitchell himself was present at the meeting, and the potential for litigation was inchoate at that time.

More significantly, Mitchell has not shown that the third element of the spoliation test has been met: that is, that the lost notes would have supported his case.  As to this factor, the aggrieved party bears the burden of showing that there is a "likelihood that the destroyed evidence would have been of the nature alleged."  Kronisch, 150 F.3d at 127; accord Byrnie, 243 F.3d 93 at 108 (party has the burden of producing "'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files'") (quoting Kronisch, 150 F.3d at 128).

To make this determination, a court may examine the level of culpability that has been shown with respect to the destruction (that is, the second spoliation element).  Where a party destroys evidence in bad faith or through "gross negligence," such culpability might permit a jury to conclude that the missing evidence is favorable, and thus the third element of the spoliation test could be satisfied.  Residential Funding Corp., 306 F.3d at 109.  Here, however, the only evidence on this point is that the notes were lost.  Nothing has been submitted that would support a finding of anything more than ordinary negligence.  Nor has Mitchell submitted any other evidence suggesting that the notes contained material unfavorable to defendants.  Indeed, the only the testimony on this point is Judge Lebovits's statement that the lost notes matched what was contained in the January 1998 letters.  In the absence of any "extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to

10

the spoliator, no adverse inference is appropriate." <u>Turner v. Hudson Transit Lines, Inc.</u>, 142

F.R.D. 68, 77 (S.D.N.Y. 1991).

As was true in <u>Cortes v. Peter Pan Bus Lines, Inc.</u>, 455 F. Supp. 2d 100 (D. Conn. 2006),

"[t]he only evidence that Plaintiff has adduced suggesting that the [unproduced documents]

would be unfavorable to Defendant[s] is the non-production itself." <u>Id.</u> at 103.  "While the

deliberate destruction of the [documents] or even gross negligence on the part of the [defendants]

in failing to maintain or produce the [documents] might be sufficient to support an inference that

the [documents were] favorable to Plaintiff, the [defendants'] mere negligence in not being able

to locate the [documents] does not lead to such an inference." <u>Id.</u>   Thus, as was true in <u>Cortes</u>,

there is no basis for issuing a sanction for spoliation.[8]

III.  <u>Motion Relating to Plaintiff's Witnesses</u>

Defendants have filed a motion seeking to: (a) preclude plaintiff from introducing

testimony of certain witnesses; (b) limiting the number of plaintiff's witnesses; (c) granting the

defendants leave to depose 14 witnesses in addition to the plaintiff; and (d) extending discovery

---

[8] To the extent plaintiff's argument seeks spoliation sanctions with respect to any other notes, he has made no factual showing at all with respect to other notes and thus any request for sanctions must be denied.

Plaintiff makes a separate argument that the "court should further order that the defendants cannot rebut the plaintiff's evidence regarding the criteria and policies and procedures in force during the 1995 to 1998 recertification process because the defendants failed to preserve the chain of custody regarding the materials furnished and an independent record of the history and criteria and policies and procedures pertinent for this case." <u>See</u> Docket #157 at 9.  Again, plaintiff provides no factual explanation at all for this request beyond this conclusory statement.  Accordingly, the request is denied.  This ruling of course is without prejudice to any future motion <u>in</u> <u>limine</u>, if warranted, with respect to the question of the admissibility under the Federal Rules of Evidence of any materials defendants might offer on their policies and procedures.

by 45 days.[9]  We discuss each request for relief separately.  While plaintiff has made no motion

on this point, we conclude by discussing whether plaintiff may also depose additional witnesses.

By way of background, the Court notes that this case was originally filed in 2001.  It was

returned to the district court in August 2004 following the appeal of an order dismissing the case.

In October 2004, the district court issued a scheduling order under which all discovery was to be

completed by April 8, 2005.  See Order, filed Oct. 6, 2004 (Docket #74).  This Court extended

this deadline by three months to July 8, 2005.  See Memorandum Endorsed Order, filed Feb. 18,

2005 (Docket #96).  The deadline was thereafter extended another three months to October 3,

2005.  See Memorandum Endorsed Order, filed June 10, 2005 (Docket #107).  The deadline was

then extended an additional 14 months to November 30, 2006.  See Order, filed Feb. 14, 2006

(Docket # 115).

In November 2006, plaintiff requested six more months to complete discovery.  On

November 22, 2006, the Court issued an order stating that it was "reluctantly" granting a "final

extension" of discovery to April 30, 2007.  See Order, filed Nov. 27, 2006 (Docket #117), at 1.

The Order stated that any further request for an extension would have to show "extraordinary

circumstances not foreseeable at any time prior to the date of the application and not within

control of counsel or the party" and could not be made by letter.  Id. at 1.  In early April 2007, as

_____

[9] See Notice of Motion, dated May 1, 2007 (Docket #132); Declaration of Monica A.
Connell in Support of State Defendants' Motion, dated May 1, 2007 (attached to Notice of
Motion); Memorandum of Law in Support of State Defendants' Motion for Relief in Regard to
Plaintiff's Late Designation of Witnesses in Violation of Court Order, dated May 1, 2007
(Docket #167); Plaintiff's Response Memorandum in Opposition to Motion to Preclude
Witnesses, dated May 7, 2007 (Docket ##148, 158); Reply Memorandum in Further Support of
State Defendants' Motion for Relief in Regard to Plaintiff's Late Designation of Witnesses in
Violation of Court Order, dated May 8, 2007 (Docket #144).

12

a result of the presentation of various discovery disputes, the Court granted a 30-day extension of the discovery period.  See Order, filed Apr. 3, 2007 (Docket #128), ¶ 3.  Accordingly, the discovery period ended on May 30, 2007, although some later orders of the Court refer to the discovery deadline as May 31, 2007.

   A.  Request to preclude plaintiff from introducing testimony of late-designated witnesses

   In a letter dated March 13, 2007 (Docket #124), defendants requested that plaintiff be required to "update his discovery responses."  Following additional letter briefing, this Court directed that, on or before March 23, 2007, plaintiff comply with his obligations pursuant to Rule 26(a)(1)(A) and/or update any responses to discovery requests seeking the names of witnesses.  See Order, dated Mar. 16, 2007 (Docket #119), ¶ 11.  This deadline was later extended at plaintiff's request to April 3, 2007.  See Memorandum Endorsed Order, dated Mar. 16, 2007 (Docket #118); Order, dated Apr. 2, 2007 (Docket #128), ¶ 1.

   To facilitate the scheduling of depositions so that they could conclude by the discovery deadline, the Court separately ordered that by April 6, 2007, the parties were required to inform each other in writing of any witnesses each intended to depose.  See Order, dated Apr. 2, 2007 (Docket #128), ¶ 5.  The parties were required to confer following receipt of the letters to schedule the depositions of these witnesses.  Id. ¶¶ 6-7.  The Court issued this Order so that depositions could be completed by the discovery deadline.

   On April 3, 2007, plaintiff sent a letter containing the names of 35 witnesses and also made reference to "all named defendants."  See Docket #132, Ex. C.  He did not indicate whether these individuals were being listed in response to discovery requests or in response to Rule 26(a)(1)(A) obligations.  Rather, he identified these individuals as people he "intend[s] to

13

call as witnesses for my case."  Id.  For some witnesses, descriptions were given as to particular

subject areas within the witness's knowledge.[10]

Then, on April 6, 2007, the plaintiff sent a letter containing the names of 56 witnesses

along with "the confidential evaluators" and six of the defendants.  See Docket #132, Ex. D.

Some of these names overlap with those on the April 3 list.  He identifies the persons in the April

6 letter as "persons I intend to depose."  Id.  He also sent a letter dated April 12, 2007 stating that

he will "seek to introduce two additional witnesses as part of my witness list."  See Docket #132,

Ex. E.  He did not name these two witnesses.

Defendants protested plaintiff's submissions by letter and then made the instant motion,

asking, inter alia, that plaintiff be precluded from "relying upon" any of the witnesses in the

April 6 and 12 letters.  See Docket #167 at 7.  The Court assumes that by using the term

"relying," the defendants are seeking to preclude plaintiff from calling such witnesses at trial or

using affidavits from them in any summary judgment motions.  (The defendants also sought to

preclude plaintiff from deposing these witnesses – an argument treated separately in section III.E

below.)

The defendants make no argument regarding plaintiff's failure to supply information

pertaining to such witnesses (such as, to which interrogatories they are responsive or whether

plaintiff met the requirement of Rule 26(a)(1)(A) that each witness be identified by the "subjects

of the [discoverable] information" the witness has).  Instead, they argue (1) that the sheer

number of witnesses requires some kind of sanction and (2) that the April 6 and 12 lists are late.

_____

[10] Contrary to plaintiff's belief, the Court has never directed plaintiff to provide a "list of trial witnesses."  Docket #148 at 3.  No such list will be required until after discovery is completed.

However, to the extent the names provided by plaintiff in his April 3 list are responsive to the interrogatories and constitute names properly produced pursuant to Rule 26(a)(1)(A), there is no requirement that those responses be limited to a certain number of persons.  Indeed, a party would presumably fail to comply with his discovery obligations if he failed to list all witnesses responsive to discovery requests.

With respect to the untimeliness argument, however, it appears that defendants may be confusing the purposes of plaintiff's letters.  The April 3 letter was timely in that the Court permitted plaintiff until that date to update his discovery responses.  See Docket #119; Docket #118; Docket #128, ¶ 1. The April 6 letter was timely to the extent it was sent in response to the Order requiring the parties to inform each other of whom they intended to depose.  See Docket #128, ¶ 5.

Accordingly, plaintiff is limited to his April 3 list for purposes of responding to defendants' interrogatories and/or his disclosure obligations under Rule 26(a)(1)(A).  The April 12 letter is ineffective to satisfy those obligations inasmuch as it does not contain the names of any witnesses.  Whether plaintiff may depose individuals listed in the April 6 letter is discussed in section III.E below.

B.  Request to limit plaintiff's witnesses

Defendants also make arguments that certain witnesses on the April 3 list are "extraneous, unnecessary or irrelevant."  See Docket #167 at 11.  Such arguments are premature.  Again, the Court views the April 3 list as merely constituting plaintiff's updated responses to previously served discovery requests or as plaintiff's effort to fulfill his Rule 26(a)(1)(A) obligations.  Defendants' arguments regarding whether these individuals have relevant

15

information (or any other complaints about them) should be raised in the event plaintiff seeks to depose particular witnesses (discussed further below), includes affidavits from them as part of summary judgment briefing, or includes their names in a joint pretrial order.  Accordingly, the defendants' request to "preclude" these witnesses is denied without prejudice.

      C.  Request to depose 14 witnesses in addition to the plaintiff

      Defendants seek to depose 14 witnesses who, in their judgment, have information relevant to this case.  See Docket #167 at 12.  Plaintiff has submitted no opposition to this request and thus it is granted.

      D.  Request to extend discovery by 45 days

      The Court has previously recognized that there might be a need to conduct depositions after the discovery deadline in light of the pending motions.  The defendants, in letters to the court in early April 2007, raised the various problems they perceived with plaintiff's witness lists.  The Court directed defendants to file a written motion (that is, the instant motion) and provided that, in the meantime, the deposition of plaintiff and up to 10 depositions sought by plaintiff had to take place by the discovery deadline.  See Order, dated Apr. 13, 2007 (Docket #130), §§ II,  III.  The Court thus contemplated that any additional depositions sought by defendant would take place after that deadline and on a reasonable schedule.  The 45 days sought by defendants for purposes of taking the 14 depositions is reasonable.  Moreover, plaintiff does not oppose this request.  Accordingly, the Court grants a period of 45 days from the date of this Order for the purpose of permitting defendants to take the additional 14 depositions they seek.

E.  Depositions by Plaintiff

Up to this point, the Court has discussed defendants' motion insofar as it sought to bar plaintiff from "relying" on certain witnesses.  The Court has interpreted that request as addressed to whether plaintiff's April 3 letter complied with his discovery obligations.  But defendants also seek to preclude plaintiff from "deposing" certain witnesses.  See Docket #167 at 7; see also Docket #148 at 6 (making reference to plaintiff's desire to depose witnesses that were contained in a listing dated April 6, 2007).  Accordingly, we now address this request.

Plaintiff's April 6 letter asserts that he wishes to depose a list of more than 62 persons. Defendants argue that plaintiff should be precluded from deposing any more than 10 witnesses. See Fed. R. Civ. P. 30(a)(2)(A).  The Order dated April 13, 2007, provided that

> To the extent plaintiff seeks to depose more than 10 persons, Fed. R. Civ. P. 30(a)(2)(A) requires that leave of the Court be obtained and thus plaintiff is under an affirmative obligation to make any motion seeking such leave.  Accordingly, to the extent plaintiff seeks to depose more than 10 persons, he must make a motion on this point by May 1, 2007, or he will be limited to deposing 10 persons.

See Docket #130 at 2 (emphasis in original).  The May 1 deadline for motions was later extended to May 7.  See Memorandum Endorsed Order, dated May 1, 2007 (Docket #135).  Plaintiff never made a motion to take more than 10 depositions and thus, by operation of Fed. R. Civ. P. 30(a)(2)(A), plaintiff is limited to deposing 10 witnesses.[11]

---

[11] Plaintiff's passing reference, contained in opposition papers to defendants' motion, see Docket #148 at 9, to a desire to depose 17 witnesses is insufficient for two reasons.  First, it was not contained in a motion filed by plaintiff – a requirement that was explicitly set forth in the Court's April 13 Order.  Second, plaintiff's argument on this point contains no information as to the names of these 17 witnesses and what testimony each will offer.  Thus, the Court has no basis on which to grant the request to exceed 10 depositions "consistent with Rule 26(b)(2)." See Fed. R. Civ. P. 30(a)(1)(2).

Defendants also make arguments that particular witnesses do not have relevant information.  See Docket #167 at 7-12.  There is no record at this point, however, as to which 10 witnesses plaintiff seeks to depose.  Accordingly, the Court views the defendants' arguments as premature.

The Court finds it odd that neither side has identified plaintiff's "top 10" witnesses.  The Court had previously ordered the plaintiff to inform defendants by April 20 of the 10 witnesses he wished to depose in the event he were limited to only 10 depositions – and to begin the process of deposing these individuals.[12]  Neither party gives any information to the Court as to whether plaintiff complied with this Order and if not, why not.  Nonetheless, the record is clear that plaintiff took some depositions, including the depositions of some defendants.  Plaintiff also indicated that he intended to subpoena some witnesses.  See, e.g., Order, dated May 16, 2007 (Docket #183), at 2.  Perhaps plaintiff has already taken his allotted 10 depositions and defendants' arguments regarding the relevance of witnesses were offered only in the event that plaintiff were permitted to depose more than 10 witnesses.

---

[12] Specifically, the April 13 Order required the plaintiff to

identify on or before April 20, 2007, the 10 defendants he would depose in the event he were permitted only 10 depositions (a list that would presumably include the named defendants).  The parties shall begin by taking plaintiff's deposition and then shall arrange for the depositions of the individuals on plaintiff's list – unless defendants object to the deposition of any of the named individuals for reasons that will be raised in their motion, in which case the depositions of such individuals need not immediately take place.

See Docket #130 at 2; see also Order, dated May 1, 2007 (Docket #135) ("The parties have provided no reason why plaintiff's deposition along with the initial 10 depositions cannot take place by May 31, 2007") (denying request for extension of the discovery deadline).

18

In any event, the Court will assume that plaintiff has not taken all 10 depositions and thus is entitled to depose some number of witnesses at this point (that is, 10 minus the number he has taken already) despite the passage of the discovery deadline.  Accordingly, the Court rules on defendants' application as follows: plaintiff is permitted to depose up to 10 witnesses (a number that includes witnesses he has already deposed).  If he has not already identified these specific witnesses, he shall do so in a letter to defendants' counsel within 3 business days of this Order.  Within 3 business days thereafter, defendants may renew any arguments as to the relevance of (or any other objection to) particular witnesses by means of a letter to the Court.  Plaintiff may respond 3 business days thereafter.  Any depositions that are not disputed must be scheduled promptly.  Plaintiff shall be permitted 45 days from the date of this Order to conduct these remaining depositions.

Conclusion

The defendants' motion to submit in camera statements from the evaluators (Docket #133) is denied.  Plaintiff's motion to depose the evaluators (Docket #160) is denied.  Plaintiff's motion to preclude the testimony of Judge Lebovits and the introduction of documents prepared by him (Docket #157) is denied.  Defendants' motion seeking various forms of relief with respect to Mitchell's witnesses (Docket #132) is granted in part and denied in part.  The motions docketed as #156 and #159 are deemed abandoned and thus denied.  Plaintiff's undocketed motion to amend is deemed withdrawn.  The parties shall follow the procedures outlined in this Order with respect to any additional depositions.

SO ORDERED.

19

Dated:  September 13, 2007
       New York, New York

                                         _____
                                         GABRIEL W. GORENSTEIN
                                         United States Magistrate Judge

Copies sent to:

Stephen T. Mitchell, Esq.
67 Wall Street, Suite 2211
New York, NY10005

Monica Connell
Assistant Attorney General
120 Broadway
New York, NY 10271

Dated: September 13, 2007
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Stephen T. Mitchell, Esq.
67 Wall Street, Suite 2211
New York, NY 10005

Monica Connell
Assistant Attorney General
120 Broadway
New York, NY 10271

20